

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLOTTE S. MOMAN                                                        PLAINTIFF

VS.                                                     CIVIL ACTION NO.: 3:15cv152 CWR-LRA

HINDS COUNTY, MISSISSIPPI, THE
CITY OF JACKSON, MISSISSIPPI,
JACKSON-HINDS LIBRARY SYSTEM,
and JOHN DOES 1-20                                          DEFENDANTS

## COMPLAINT
*(Jury Trial Demanded)*

The Plaintiff, CHARLOTTE S. MOMAN, files her Complaint against Hinds County, Mississippi, The City of Jackson, Mississippi, the Jackson-Hinds Library System, and John Does 1-20, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f), and 42 U.S.C. § 1981, to correct unlawful employment practices as well as retaliatory actions for her lawful exercise of seeking relief for such practices by filing a complaint with the EEOC, and to provide Plaintiff with appropriate relief as a result of being adversely affected by such actions, stating as follows:

## I.
## THE PARTIES

1. That Plaintiff Charlotte S. Moman (Mrs. Moman) is an adult female resident citizen of Ridgeland, Madison County, Mississippi.

2. That Defendant Hinds County, Mississippi (Hinds County) is a political subdivision of the State of Mississippi with its principle place of business being located at the Hinds County Chancery Court Building, 316 South President Street, Jackson, Mississippi 39201. Defendant, Hinds County, Mississippi can be served with process of this Court upon the President of its Board

of Supervisors, the Honorable Darrel McQuirter, at his business address, 316 South President Street, Jackson, Mississippi 39201 or the Hinds County Chancery Court Clerk, Eddie Jean Carr, at this same address.

3. That Defendant, City of Jackson (City) is a municipality operating and existing under the laws of the State of Mississippi with its principle place of business being located at 219 South President Street, Jackson, Mississippi 39205. Defendant, City of Jackson, may be served with process of this Court upon its Mayor, the Honorable Tony T. Yarber at his business address, 219 South President Street, Jackson, Mississippi 39205, or the City Clerk, Kristi Moore, at this same address.

4. That Defendant Jackson-Hinds Library System (JHLS) is a political subdivision organized, operating and existing under the laws of the State of Mississippi pursuant to *Miss. Code Ann.* §39-3-1 in which the libraries for Jackson Mississippi and Hinds County Mississippi were established and subsequently combined pursuant to *Miss. Code Ann.* §39-3-8 and other applicable laws. JHLS can be served with the process of this Court by service upon the Chairman of the Board of the JHLS, Ricky Jones, at his residence address, 1020 Dewey Street, Jackson, Mississippi 39209, or wherever he may be found.

5. That at all times relevant, Hinds County, the City, and JHLS were, and continues to be, engaged in business as a public library system in Jackson and throughout Hinds County, Mississippi with at least fifteen (15) employees. These Defendants have continuously been employers engaged in businesses affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-5(f).

6. That Defendants John Does 1-20 are individuals and or entities of whatever kind, whose actions and/or identities are unknown to Plaintiff, and such actions caused or contributed to the

injuries and damages complained of herein. The Doe Defendants will be served with the process of this Court when their actions and identities are discovered in accordance with the requirements of the applicable provisions of the Federal Rules of Civil Procedure.

## II.
## JURISDICTION AND VENUE

7. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

8. That the jurisdiction of this Court is invoked pursuant to 28 U. S. C. §§ 1331and 1343 as this action arises under laws of the United States of America and this action is commenced to recover damages and/or equitable relief under an Act of Congress which provides for the protection of civil rights. Venue is proper under 28 U.S.C. § 1391(b)(2) as the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Mississippi, Delta Division.

## III.
## FACTS

9. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

10. That Moman began her employment with JHLS in 1989 as a part time employee for approximately 3 months. She was then hired as a full time employee as essentially a children's librarian at the Margaret Walker Alexander Library in Jackson, Mississippi. She was later promoted to Branch Manager of this same library in or about 1991. Moman was subsequently promoted to the position of Regional Manager of JHLS in or about 1996. She was later promoted to the position of Assistant Director for Public Service for JHLS in 2004 and she remains in that position today.

11. That in addition to her Bachelor's of Arts Degree in elementary/physical education, Moman also has a Master' of Library Science Degree from the University of Southern Mississippi. This degree was obtained in May, 1991.

12. That in or about 2003, Moman filed a complaint with the EEOC against the JHLS in which she alleged that she had been the victim of racial discrimination. The basis of this complaint was that after the white Executive Director left JHLS, the qualification for this position was changed arbitrarily so that none of the black employees were qualified for the position. These qualifications could not be met by the black employees even though at least two of them, including Moman, had the same or more experience as the outgoing Executive Director.

13. That after Moman filed her initial complaint with the EEOC, the Jackson City Council passed a resolution which required JHLS to rescind the newly formed qualifications for the Executive Director position. As a result of the City's action, Moman and at least one other black employee, Carolyn McCallum who was in the position of Deputy Director, was provided an opportunity to apply for the position of Executive Director. Ms. McCallum was eventually promoted to the position of Executive Director in 2003.

14. That Moman continued to work in her positon as Regional Manager until 2004. At that time, she applied for McCallum's former position of Deputy Director which had not been filled. The name of the position, however, was changed from Deputy Director to Assistant Director for Public Service. Although the name was changed, the responsibilities were not changed and additional ones were added. Moman was the second person in charge at JHLS and Moman reported directly to the Executive Director. All other JHLS employees reported to Moman in the Executive Director's absence.

15. That Moman worked as the Assistant Director for Public Service without any problems until November, 2004. In that month, the Board changed the positons of Human Resource Officer, Finance Officer and Technical Service Supervisor to Assistant Director of Human Resources, Assistant Director of Finance, and Assistant Director of Technical Service. As a result of these changes, each of the employees holding these positions were on the same level with Moman and were no longer subordinate to her. All of these positions were held by whites.

16. That Moman was dissatisfied with these changes as they were contrary to how the organizational structure from the time that Moman began her employment with JHLS. Therefore, Moman consulted with several Board members as to the reasons for the changes. One of the Board Members, Bernice Bell, told Reverend Paul Luckett, a community advocate, that JHLS did not need two blacks to be in charge of the library. It was shortly thereafter that the changes to the aforementioned positions were made.

17. That after Moman gained this information, she filed a second complaint with the EEOC alleging racial discrimination in or about January, 2005. The EEOC could not substantiate that discrimination had taken place and issued a right-to-sue letter. Moman decided not to move forward with the complaint and continued to work in her position as Assistant Director of Public Service.

18. That in June, 2013, Carolyn McCollum retired from her position as Executive Director. The announcement of Ms. McCallum's retirement was made on June 5, 2013 via the JHLS email system. Attached to this announcement was a job description and the application deadline which was stated as August 1, 2013." Harriett Kuykendall (Kuykendall), who was Chairman of the Board at that time, conferred with Moman about the position and told Moman that the position would be posted forthwith. Moman asked Kuykendall if she would be interim Executive Director until the

position was filled and Kuykendall replied that she could not act as interim Director if she wanted to apply for the Executive Director position. Moman advised Kuykendall that she did want to apply for the position.

19. That in addition to talking with Kuykendall, Moman also talked with Board members Imelda Brown, Maggie White, Jackie Garner and Dr. Alfredteen Harrison. She explained to them that she intended to apply for the Executive Director position. There was some confusion with these Board Members, however, as some of them, including Maggie White, thought they were attempting to fill the Executive Director position with an interim Executive Director. In fact, Maggie White has made at least one public statement to this effect.

20. That although the announcement stated that the deadline for submitting applications for the Executive Director position was August 1, 2013, on June 24, 2013. Moman received a call from two of the members of the Board, Jackie Garner and Maggie BensonWhite, who advised her that JHLS had filled the position on the previous day, June 23, 2013. Moman protested that this was improper because the deadline date was August 1, 2013.

21. That according to these Board members, Kuykendall told the entire Board that Moman was not interested in the job and that the deadline for submitting applications had passed. They also stated that a number of the Board members believed they were voting for an interim director when the vote was taken to hire the new white Executive Director, Patti Furr ("Furr").

22. That Moman was never given any notice that the deadline for application was changed. JHLS never sent out any notice to Moman or posted in a public place any change in the application process or deadline for filing an application. Therefore, Moman, requested that the Board review its procedure and to re-open the process so that she could have a fair and equal opportunity to

apply for the position. Moman told the Board that she believed had been discriminated against because of her race and age. The Board denied this request.

23. That on about June 28, 2013, Moman made a written complaint to the JHLS Board, advising the Board that she was a victim of racial and age discrimination. She also advised the Board that it had violated the posted procedure for applying for the Executive Director position. Moman received an email on July 23, 2013 from Kuykendall stating that the job was filled with no explanation or acknowledgement of her complaint. On July 16, 2013, Moman applied for the executive director position.

24. That on August 2, 2013, Furr, as the new Executive Director for JHLS, told me that prior to being so employed, the Board Chairman, Kuykendall, told her that Moman had filed a lawsuit against JHLS, and therefore, Moman would not get the job. On August 8, 2013, Furr told Moman that she had nothing to do with how the board handled the interviews. Furthermore, Kuykendall told her, Furr, that even if she had not been hired, a lady from Florida, who was white, would have been and Moman "was not going to get it."

25. That on or about August 16, 2013, Plaintiff filed a Charge of Discrimination with the EEOC. She charged that JHLS discriminated against her on the basis of race and age and that it retaliated against her for filing previous complaints with the EEOC. Moman received a Notice of Right to Sue Letter from the EEOC dated December 6, 2014. The EEOC made no determination as to whether it could substantiate the presence of discrimination as charged in Moman's complaint.

26. That the actions of JHLS and Kuykendall deprived Moman of equal employment opportunities and otherwise adversely affected her employment because she challenged and opposed JHLS's discriminatory and unlawful employment practices that were violated Title VII.

Such practices were negligent and/or intentional and were done with malice and/or with reckless disregard for the federally protected rights of Plaintiff.

## IV.
## CAUSES OF ACTION

### COUNT I: (RACE DISCRIMINATION UNDER 42 U.S.C. § 1981)

27. That Moman is a person within the meaning of 42 U.S.C. § 1981 and is therefore protected under the provisions set forth therein. Defendants intentionally engaged in illegal discriminatory conduct against Moman in the ways and manners set forth above because she is of the African American race. Defendants' intentional discriminatory actions involved the making and enforcement of contracts. As the proximate result of Defendants' illegal and discriminatory actions, Moman suffered injuries and damages.

### COUNT II - (NEGLIGENCE)

28. That Defendants had a duty to conduct its business in a manner that complied with federal law and in particular the provisions of 42 U.S.C. 1981. Defendants breached this duty by failing to comply with these laws as set forth above. As a result of Defendants' breach of this duty, Moman suffered reasonably foreseeable harm and damages.

### COUNT III: (WANTON NEGLIGENCE)

29. That Defendants had a duty to conduct its business in a manner that complied with federal law and in particular the provisions of 42 U.S.C. 1981. Defendants negligently and/or wantonly breached this duty by failing to comply with these laws as set forth above. As a result of Defendants' negligent and/or wanton actions, Moman suffered reasonably foreseeable harm and damages as set forth herein.

### COUNT IV - (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

30. That Defendants' negligent failure to act reasonably and prudently in the making and/or performance of the contract as set forth herein, resulted in the negligent infliction of mental and emotional distress upon Moman. Such negligent infliction of mental and emotional distress and the harm and damages caused by same were reasonably foreseeable.

### COUNT V: (ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988)

31. That this action is to enforce the provisions of 42 U.S.C. 1981. It was the legislative intent of Congress to routinely award attorney's fees as part of the costs in order to encourage and reward private enforcement of civil rights. There are no special circumstances in this case which would justify a denial of attorney's fees. Upon prevailing on the claims predicated under 42 U.S.C. 1981, the Plaintiff would be entitled to an award of attorney's fees under the provisions of 42 U.S.C. 1988.

### V.
### DEMAND FOR JURY TRIAL

32. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

33. That the Plaintiff hereby requests a jury trial on all questions of fact that are raised in his Complaint.

### IV.
### PRAYER FOR RELIEF

34. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Charlotte S. Moman respectfully requests that she be made whole by ordering Defendants to provide the following:

 a. Back pay with pre and post judgment interest in an amount to be determined at trial;

 b. Compensation for past and future pecuniary losses resulting from the unlawful employment practice complained of herein, including losses suffered for emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

 c. Punitive damages for its malicious and reckless conduct described herein in an amount to be determined at trial;

 d. Attorneys' fees, costs, and expenses; and

 e. Grant such other, further, and different relief as the Court deems just and proper under the premises.

**RESPECTFULLY SUBMITTED,** this 2 day of March, 2015.

*Charlotte S. Moman*
**CHARLOTTE S. MOMAN (pro se)**

**Charlotte S. Moman**
**152 McCormack Drive**
**Ridgeland, MS 39157**
**Tel: (601) 454-6389**