IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLOTTE S. MOMAN**                                              **PLAINTIFF**

**VERSUS**                         **CIVIL ACTION NO.: 3:15CV152 CWR-LRA**

**JACKSON-HINDS LIBRARY SYSTEM**                              **DEFENDANT**

**AMENDED COMPLAINT**
**(Jury Trial Demanded)**

COMES NOW, the Plaintiff, CHARLOTTE S. MOMAN, by and through her attorney of record and files this her Amended Complaint against the Jackson-Hinds Library System, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f), and 42 U.S.C. § 1981, to correct unlawful employment practices as well as retaliatory actions for her lawful exercise of seeking relief for such practices by filing a complaint with the EEOC, and to provide Plaintiff with appropriate relief as a result of being adversely affected by such actions, stating as follows:

**I.**
**THE PARTIES**

1. That Plaintiff Charlotte S. Moman (Mrs. Moman) is an adult female resident citizen of Ridgeland, Madison County, Mississippi.

2. That Defendant Jackson-Hinds Library System (JHLS) is a political subdivision organized, operating and existing under the laws of the State of Mississippi pursuant to *Miss. Code Ann.* § 39-3-1 in which the

       libraries for Jackson Mississippi and Hinds County Mississippi were established and subsequently combined pursuant to *Miss. Code Ann.* §39-3-8 and other applicable laws. JHLS can be served with the process of this Court by service through their attorneys of record.

3. That at all times relevant, JHLS was, and continues to be, engaged in business as a public library system in Jackson and throughout Hinds County, Mississippi with at least fifteen (15) employees. The Defendant has continuously been employers engaged in businesses affecting commerce within the meaning of § 701 (b), (g), and (h) of Title VII, 42 U.S. C. § 2000e-5(f).

## II.
## JURISDICTION AND VENUE

4. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

5. That the jurisdiction of this Court is invoked pursuant to 28 U.S. C.§§ 1331 and 1343 as this action arises under laws of the United States of America and this action is commenced to recover damages and/or equitable relief under an Act of Congress which provides for the protection of civil rights. Venue is proper under 28 U.S.C. § 1391(b)(2) as the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi, Northern Division.

## III.
## FACTS

6. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

7. That Moman began her employment with JHLS in 1989 as a part time employee for approximately 3 months. She was then hired as a full time employee as essentially a children's librarian at the Margaret Walker Alexander Library in Jackson, Mississippi. She was later promoted to Branch Manager of this same library in or about 1991. Moman was subsequently promoted to the position of Regional Manager of JHLS in or about 1996. She was later promoted to the position of Assistant Director for Public Service for JHLS in 2004 and she remains in that position today.

8. That in addition to her Bachelor's of Arts Degree in elementary/physical education, Moman also has a Master' of Library Science Degree from the University of Southern Mississippi. This degree was obtained in May, 1991.

9. That in or about 2003, Moman filed a complaint with the EEOC against the JHLS in which she alleged that she had been the victim of racial discrimination. The basis of this complaint was that after the white Executive Director left JHLS, the qualification for this position was changed arbitrarily so that none of the black employees were qualified

for the position. These qualifications could not be met by the black employees even though at least two of them, including Moman, had the same or more experience as the outgoing Executive Director.

10. That after Moman filed her initial complaint with the EEOC, the Jackson City Council passed a resolution which required JHLS to rescind the newly formed qualifications for the Executive Director position. As a result of the City's action, Moman and at least one other black employee, Carolyn McCallum who was in the position of Deputy Director, was provided an opportunity to apply for the position of Executive Director. Ms. McCallum was eventually promoted to the position of Executive Director in 2003.

11. That Moman continued to work in her position as Regional Manager until 2004. At that time, she applied for McCallum's former position of Deputy Director which had not been filled. The name of the position, however, was changed from Deputy Director to Assistant Director for Public Service. Although the name was changed, the responsibilities were not changed and additional ones were added. Moman was the second person in charge at JHLS and Moman reported directly to the Executive Director. All other JHLS employees reported to Moman in the Executive Director's absence.

12. That Moman worked as the Assistant Director for Public Service without any problems until November, 2004. In that month, the Board

changed the positions of Human Resource Officer, Finance Officer and Technical Service Supervisor to Assistant Director of Human Resources, Assistant Director of Finance, and Assistant Director of Technical Service. As a result of these changes, each of the employees holding these positions were on the same level with Moman and were no longer subordinate to her. All of these positions were held by whites.

13. That Moman was dissatisfied with these changes as they were contrary to how the organizational structure from the time that Moman began her employment with JHLS. Therefore, Moman consulted with several Board members as to the reasons for the changes. One of the Board Members, Bernice Bell, told Reverend Paul Luckett, a community advocate, that JHLS did not need two blacks to be in charge of the library. It was shortly thereafter that the changes to the aforementioned positions were made.

14. That after Moman gained this information, she filed a second complaint with the EEOC alleging racial discrimination in or about January, 2005. The EEOC could not substantiate that discrimination had taken place and issued a right-to-sue letter. Moman decided not to move forward with the complaint and continued to work in her position as Assistant Director of Public Service.

15. That in June, 2013, Carolyn McCollum retired from her position as Executive Director. The announcement of Ms. McCallum's retirement was made on June 5, 2013 via the JHLS email system. Attached to this announcement was a job description and the application deadline which was stated as August 1, 2013. Harriett Kuykendall (Kuykendall), who was Chairman of the Board at that time, conferred with Moman about the position and told Moman that the position would be posted forthwith. Moman asked Kuykendall if she would be interim Executive Director until the position was filled and Kuykendall replied that she could not act as interim Director if she wanted to apply for the Executive Director position. Moman advised Kuykendall that she did want to apply for the position.

16. That in addition to talking with Kuykendall, Moman also talked with Board members Imelda Brown, Maggie White, Jackie Gamer and Dr. Alfredteen Harrison. She explained to them that she intended to apply for the Executive Director position. There was some confusion with these Board Members, however, as some of them, including Maggie White, thought they were attempting to fill the Executive Director position with an interim Executive Director. In fact, Maggie White has made at least one public statement to this effect.

17. That although the announcement stated that the deadline for submitting applications for the Executive Director position was August

1, 2013, on June 24, 2013. Moman received a call from two of the members of the Board, Jackie Gamer and Maggie Benson White, who advised her that JHLS had filled the position on the previous day, June 23, 2013. Moman protested that this was improper because the deadline date was August 1, 2013.

18. That according to these Board members, Kuykendall told the entire Board that Moman was not interested in the job and that the deadline for submitting applications had passed. They also stated that a number of the Board members believed they were voting for an interim director when the vote was taken to hire the new white Executive Director, Patti Furr ("Furr").

19. That Moman was never given any notice that the deadline for application was changed. JHLS never sent out any notice to Moman or posted in a public place any change in the application process or deadline for filing an application. Therefore, Moman, requested that the Board review its procedure and to re-open the process so that she could have a fair and equal opportunity to apply for the position. Moman told the Board that she believed had been discriminated against because of her race and age. The Board denied this request.

20. That on about June 28, 2013, Moman made a written complaint to the JHLS Board, advising the Board that she was a victim of racial and age discrimination. She also advised the Board that it had violated the

posted procedure for applying for the Executive Director position. Moman received an email on July 23, 2013 from Kuykendall stating that the job was filled with no explanation or acknowledgement of her complaint. On July 16, 2013, Moman applied for the executive director position.

21. That on August 2, 2013, Furr, as the new Executive Director for JHLS, told Moman that prior to being so employed, the Board Chairman, Kuykendall, told her that Moman had filed a lawsuit against JHLS, and therefore, Moman would not get the job. On August 8, 2013, Furr told Moman that she had nothing to do with how the board handled the interviews. Furthermore, Kuykendall told her, Furr, that even if she had not been hired, a lady from Florida, who was white, would have been and Moman "was not going to get it."

22. That on or about August 14, 2013, Plaintiff filed a Charge of Discrimination with the EEOC. She charged that JHLS discriminated against her on the basis of race and age and that it retaliated against her for filing previous complaints with the EEOC.  See Exhibit "A"

23. On or about December 9, 2013, Ms. Furr instructed another employee, Sunny Buckarma, to specially file a grievance against Ms. Moman

24. On or about December 26, 2013, Ms. Moman filed an amended charge of retaliation discrimination due to Ms. Furr requests her to retire.  See Exhibit "B"

25. On or about March 24, 2014, Ms. Furr found the grievance against Ms. Moman unfounded.

26. Moman received a Notice of Right to Sue Letter from the EEOC dated December 6, 2014. The EEOC made no determination as to whether it could substantiate the presence of discrimination as charged in Moman's complaint.  Attached is Exhibit "C" the Notice of Right to Sue.

27. On or about March 2, 2015, Moman filed the above styled case for discrimination practices of the Defendant, her employer.  Defendant continued its pattern and practice discrimination against Moman.

28. On or about March 13, 2015, Moman was presented with a grievance from Furr based on allegations violations of the chain of command by another employee, Shannon Presley.

29. Ms. Presley states that Ms. Moman harassed and bullied her on January 27, 2015 and on February 26, 2015.

30. Defendant's employee handbook clearly states that all employees are to report problems to their supervisor within ten (10) days.

31. Ms. Furr is not Ms. Presley's supervisor.  Also, this incident was well outside the ten (10) day requirement.

32. On March 19, 2015, Ms. Furr again reprimanded Ms. Moman for contacting Ms. Presley about getting a patron's history in order to resolve a patron's complaint.

33. Ms. Moman had followed previous procedures about resolving patron's complaints for the Library.

34. On or about March 24, 201, Ms. Moman filed another charge of discrimination for race and retaliation discrimination.  See Exhibit "D"

35. On about April 27, 2015, Ms. Furr placed a derogatory personal memo in Ms. Moman's file.

36. Ms. Moman never had any negative personal memorandums in her personal file prior to her filing an EEOC complaint in 2013 or EEOC suit in 2015.

37. By such actions, Defendant continues, by and through its agents, to retaliate against her for filing a discrimination lawsuit against it.

38. That the actions of JHLS and Kuykendall deprived Moman of equal employment opportunities and otherwise adversely affected her employment because she challenged and opposed JHLS's discriminatory and unlawful employment practices that were violated Title VII.  Such practices were negligent and/or intentional and were done with malice and/or with reckless disregard for the federally protected rights of Plaintiff.  As the executive director, Ms. Furr began requesting that Ms. Moman retire, abolished committees at the workplace that she had set up, removed two white subordinates from under her, discontinued staff training workshop and changed her job descriptions.

## IV.
## CAUSES OF ACTION

### COUNT I: (RACE DISCRIMINATION)

39. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

40. Defendant's actions constitute intentional discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

41. As a direct and proximate result of Defendant's unlawful, discriminatory conduct toward Plaintiff, Plaintiff has lost wages and benefits and has sustained other pecuniary loss.

42. Plaintiff has also been denied opportunities for career advancement. Defendant's discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, health issues, and emotional stress.

### COUNT II: (RETALIATION)

43. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

44. Defendant has unlawfully retaliated against Plaintiff for opposing discriminating practices by Defendant, thereby engaging Plaintiff in protected activity under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

45. Defendant unlawful retaliation against Plaintiff has damaged her professional reputation among her peers.

46. As a direct and proximate result of Defendant's unlawful conduct toward Plaintiff, Plaintiff has lost wages and benefits and has sustained other pecuniary loss. Plaintiff has also been denied opportunities for career advancement. Defendant's retaliatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, health issues, and emotional stress.

## COUNT III: (PUNITIVE DAMAGES)

47. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

48. The acts and omissions of Defendant described herein were willful, deliberate, and done with callous disregard for the rights of, sensibilities of, and likelihood of harm to Plaintiff.

49. Plaintiff is entitled to punitive damages as a result of Defendant's intentional acts in violation of Plaintiff's federally and state protected rights. Alternatively, Plaintiff is entitled to punitive damages because Defendant's unlawful acts against Plaintiff were committed maliciously and/or in reckless disregard of Plaintiff's rights.

**COUNT IV: (ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988)**

50. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

51. That this action is to enforce the provisions of 42 U.S.C. 1981. It was the legislative intent of Congress to routinely award attorney's fees as part of the costs in order to encourage and reward private enforcement of civil rights. There are no special circumstances in this case which would justify a denial of attorney's fees. Upon prevailing on the claims predicated under 42 U.S.C. 1981, the Plaintiff would be entitled to an award of attorney's fees under the provisions of 42 U.S.C. 1988.

**V.
DEMAND FOR JURY TRIAL**

52. That the allegations of the preceding paragraphs are incorporated herein by reference as if set forth in full herein.

53. That the Plaintiff hereby requests a jury trial on all questions of fact that are raised in her Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Charlotte S. Moman respectfully requests that she be made whole by ordering Defendant to provide the following:

    a. Back pay with pre and post judgment interest in an amount to be determined at trial;

b.  Compensation for past and future pecuniary losses resulting from the unlawful employment practice complained of herein, including losses suffered for emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

c.  Punitive damages for its malicious and reckless conduct described herein in an amount to be determined at trial;

d.  Attorneys' fees, costs, and expenses; and

e.  Grant such other, further, and different relief as the Court deems just and proper under the premises.

Respectfully submitted,

Charlotte Moman

By:  /s/ DANIEL D. WARE
Daniel D. Ware, Attorney for Plaintiff
WARE LAW FIRM, PLLC
2609 US Highway 49 South
Florence, Mississippi 39073
Telephone: (601) 845-9273
Facsimile: (601) 845-0749
MSB#10,847
dware@warelawfirm.com